PAOLO RULLO ET AL. *v.* GENERAL
MOTORS CORPORATION ET AL.
(13315)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued April 12—decision released June 28, 1988

*Jay H. Sandak,* with whom was *Catherine C. Ziehl,* for the appellants (plaintiffs).

*Joseph A. Moniz,* with whom were *Daniel L. Fitz-Maurice* and, on the brief, *Deborah S. Chang,* for the appellee (named defendant).

COVELLO, J. The plaintiffs, Paolo Rullo, Natalina Rullo and Maria Rullo, instituted this action against the defendants, General Motors Corporation (General Motors) and Brady-Stannard Motors Company, Inc., for personal injuries sustained as the result of an automobile collision that took place on July 19, 1981. The gravamen of the Rullos' claim was that the front seat locking mechanism of their 1980 Oldsmobile automobile suddenly failed. This caused the seat to slide rearward thereby preventing the plaintiff, Paolo Rullo, the driver, from applying the brakes. This in turn caused their automobile to strike the rear of a vehicle directly in front of them and resulted in the plaintiffs' personal injuries. A jury found the issues for the defendant General Motors.[1]

---

[1] The plaintiffs withdrew their complaint as to the defendant Brady-Stannard Motors Company, Inc.

The plaintiffs appeal from the judgment against them that followed, contending that the trial court erred in permitting the introduction into evidence of videotapes of automotive field tests that: (1) were not timely disclosed to plaintiffs' counsel; and (2) were not shown to have the requisite similarity to the accident. We conclude that there was no abuse of the significant discretion that reposes in the trial court in connection with both of these matters and, therefore, find no error.

I

The plaintiffs claim first that the court erred in admitting the videotape of certain General Motors' tests because of their late disclosure to plaintiffs' counsel. Examination of the record discloses that the parties agreed that following the collision, the seat adjuster mechanism was bent, deformed and not operating properly. The plaintiffs contended that the force of the collision was inadequate to have caused the deformity and that the mechanism had been defective since they purchased the automobile. The defendant claimed, on the other hand, that it was the force of the collision itself that had bent the seat adjuster mechanism.

Both sides offered test results through the testimony of expert witnesses to assist the jury in dealing with the seat mechanism controversy. The chronology of the experts' involvement in the case is as follows:

September 27, 1984—The plaintiffs disclosed John Zamparo as their expert;

January 21, 1986—General Motors disclosed Jeffrey Pearson as its expert;

May 27, 1986—General Motors completed the deposition of Zamparo;

September 3, 1986—The plaintiffs deposed Pearson. He testified that no tests had been performed;

October 17, 1986—The plaintiffs disclosed Dr. Ralph Petricone as an additional expert;

November 4, 1986—General Motors' deposition of Petricone commenced. He disclosed for the first time that Zamparo had conducted force tests;

November 5, 1986—General Motors' motion in limine to preclude the testimony of Petricone was denied;

November 5, 1986—Jury selection began;

November 7, 1986—Pearson conducted the disputed tests at the General Motors laboratory;

November 10, 1986—General Motors completed Petricone's deposition;

November 12, 1986—Evidentiary phase of the trial began;

November 14, 1986—Zamparo testified for the plaintiffs. He disclosed that after he had been deposed by General Motors, he had conducted force tests on the seat adjuster mechanism. He disclosed the results of those tests;

November 19, 1986—General Motors disclosed to the plaintiffs the existence of the videotapes of its tests;

November 25, 1986—General Motors furnished the videotapes to the plaintiffs;

December 2, 1986—The plaintiffs' motion in limine to preclude the use of the videotapes was denied;

December 2, 1986—Trial resumed.

The plaintiffs argued to the trial court that General Motors had failed to disclose in a timely manner that tests had been conducted concerning the seat adjuster mechanism. They claimed a prejudicial breach of the continuing duty to disclose required

by Practice Book § 232[2] inasmuch as they had previously requested by way of interrogatory the basis for the expert's opinion.

General Motors responded that the demonstrations had been conducted in answer to the plaintiffs' own late disclosure of Petricone as an additional expert and Petricone's "eve of trial" revelation that force tests had been conducted on the seat adjuster mechanism. The trial court rejected the plaintiffs' claim of unfair surprise and prejudice and allowed the introduction into evidence of the videotape demonstrations.

Practice Book § 231 authorizes the court to respond to a party's violation of a continuing duty to disclose by the entry of "such order[s] as the ends of justice require." Specifically, an order may "prohibit . . . the party who has failed to comply from introducing designated matters in evidence."

Decisions on the entry of such sanctions rest within the sound discretion of the trial court. *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 39–40, 404 A.2d 889 (1978). In reviewing a claim that this discretion has been abused " ' "the unquestioned rule is that 'great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness.' *Dudas* v. *Ward Baking Co.*, 104 Conn. 516, 518, 133 A. 591 [1926] . . . ." *Ardoline* v. *Keegan*, 140 Conn. 552, 555, 102 A.2d 352 [1954].' *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 [1970]."

---

[2] Practice Book § 232 provides: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, he shall promptly notify the other party, or his attorney, and file and serve in accordance with Sec. 120 a supplemental or corrected compliance."

*DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972). "[T]he ultimate issue is whether the court could reasonably conclude as it did. *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 611, 153 A.2d 463 (1959)." *Timm* v. *Timm,* 195 Conn. 202, 207, 487 A.2d 191 (1985).

The videotape demonstrations served to confirm the General Motors' expert's previously disclosed opinion that the seat adjuster mechanism had been bent by the force of the collision. No new theory of causation was advanced by these demonstrations. Further, as the court correctly noted, following the disclosure of these tests, there was an eleven day suspension in the trial during which plaintiffs' counsel and their experts reviewed the defendant's test data.

Finally, there was no request for a continuance. "A continuance is ordinarily the proper method for dealing with a late disclosure. *State* v. *Villafane,* 171 Conn. 644, 669, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984) . . . ." *State* v. *Barrett,* 205 Conn. 437, 455, 534 A.2d 219 (1987). A continuance serves to minimize the possibly prejudicial effect of a late disclosure and absent such a request by the party claiming to have been thus prejudiced, appellate review of a late disclosure claim is not warranted. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 748, 535 A.2d 1287 (1988); *State* v. *Miner,* 197 Conn. 298, 305–306, 497 A.2d 382 (1985).

II

The plaintiffs further claim that the videotape demonstrations should not have been admitted as evidence

because the tests were dissimilar to the circumstances of the accident. The demonstrations consisted of two crash barrier tests. In these tests four anthropomorphic dummies were placed in the test vehicle, two in the front seat and two in the back seat. The vehicle was then run into a fixed barrier, once at seven miles per hour and again at 8.2 miles per hour. The demonstration confirmed the defendant's expert's previously disclosed opinion that the seat adjuster mechanism would warp and become deformed as the result of absorbing much less energy than was claimed to be required by the plaintiffs' experts.

The plaintiffs argue that the defendant's simulation was inaccurate because the General Motors vehicle was run into a fixed, unmoving barrier which absorbed none of the force or energy of the impact. The plaintiffs testified, however, that in the accident, the rear-ended vehicle had rolled forward after the impact thereby absorbing some of the energy of the impact. The plaintiffs also claimed that the General Motors vehicle was run directly into the barrier while the accident had involved an angular contact. The gist of the plaintiffs' argument is that the energy absorbed by the front seat and its adjusting mechanism in the General Motors' tests was far greater than the energy absorbed during the impact at the accident.

" '[T]he admission of evidence of experiments, demonstrations, or tests . . . rests in the sound discretion of the trial court . . . and this discretion will not be interfered with on appeal unless it is apparent that it has been abused. . . . [T]he question of the similarity of conditions prevailing at the time of the experiment or test to those which prevailed at the time of the occurrence in question is one that lies within the sound discretion of the trial court, to be decided in the light of all the surrounding facts and circumstances . . . .' 29 Am. Jur. 2d 909, Evidence, § 818." *State* v.

*Vennard,* 159 Conn. 385, 395–96, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971).

"To make evidence of experiments performed out of court admissible the conditions need not be identical but should be essentially similar, that is, similar in all those factors necessary to make the comparison a reasonably fair and accurate one. *McPheters* v. *Loomis,* 125 Conn. 526, 536, 7 At. (2d) 437 [1939]; 4 Chamberlayne, Evidence, § 3169; notes, 8 A.L.R. 18, 85 A.L.R. 479." *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 225, 10 A.2d 600 (1940).

The defendant argues that the "differences in surrounding conditions are [even] less relevant and do not require the [videotapes] exclusion"; *Gorelick* v. *Department of State Highways,* 127 Mich. App. 324, 336, 339 N.W.2d 635 (1983); where, as here, the experiments did not purport to be a reenactment of the accident but rather a demonstration of the force principles claimed by its expert to have been the cause of the seat adjuster mechanism's deformity. While this is certainly a relevant factor, the ultimate consideration in determining admissibility is whether the demonstration evidence will fairly assist the jury in understanding the factual issues placed before them. *Blanchard* v. *Bridgeport,* 190 Conn. 798, 806, 463 A.2d 553 (1983); *Katsetos* v. *Nolan,* 170 Conn. 637, 649, 368 A.2d 172 (1976).

The jury here had to determine the effects of a slow speed, frontal impact upon the seat adjuster mechanism of an automobile. The experiments videotaped by the defendant's expert supported its contention that a slow speed impact could indeed deform this mechanism. Although the conditions were admittedly not identical, we see nothing in this record that rises to the level of an abuse of discretion in admitting this evidence. "Dissimilarities between experimental and actual conditions

affect the weight of the evidence, not its admissibility." *Szeliga* v. *General Motors Corporation,* 728 F.2d 566, 567 (1st Cir. 1984).

There is no error.

In this opinion the other justices concurred.