STATE OF CONNECTICUT *v.* LAWRENCE HARRIS
(11109)

O'CONNELL, LAVERY and HEIMAN, Js.

Argued June 14—decision released August 17, 1993

*John S. Aissis,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and larceny in the third degree in violation of General Statutes § 53a-124. The defendant claims that because exculpatory *Brady* material was initially disclosed at trial, the court improperly failed to grant his motions for a continuance, a mistrial and a new trial. We affirm the judgment of the trial court.

This appeal arises from a robbery of the Kimberly Avenue branch of the Bank of New Haven. Shortly after 9 a.m. on August 3, 1990, a robber approached bank teller Karen Comstock and handed her a note stating: "This is a holdup, I [want] all your big bills, don't try anything stupid." When Comstock tried to delay, the robber displayed a bag containing what appeared to Comstock to be a gun. This prompted Comstock to grab a handful of bills and give them to the robber who ran out the bank's side door and escaped on a bicycle.

Comstock and another teller, Barbara Patenaude, went to the New Haven police station where they looked at more than 200 photographs. They both agreed

that a picture of another individual, William Green, resembled the robber. Detectives went to Green's address and learned that he was living in Germany. Six days later, the police showed an array of eight photographs to Comstock and Patenaude, from which each chose the picture of the defendant as the person who committed the crime. During the trial, Comstock and Patenaude, as well as a person who had been a bank customer at the time of the robbery, made in-court identifications of the defendant.

As part of their immediate postrobbery investigation, the police took fingerprints from the teller's countertop, the holdup note and the bank's side door. Although the identifiable prints lacked sufficient points of identification to establish that they definitely belonged to a specific individual, they were adequate to demonstrate that they did not belong to the defendant.

The defendant filed a pretrial motion for disclosure of exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The motion was granted and the state disclosed that fingerprints had been taken at the scene. The disclosure, however, did not include the information that the identifiable fingerprints were not those of the defendant nor did it reveal that Comstock and Patenaude had initially chosen Green's picture as resembling the robber. The defendant first learned of the photo identification of Green and the possible fingerprint exclusion during the state's case. As a result, the defendant moved for a continuance, a mistrial and, at his sentencing, a new trial.

The defendant's appeal is premised on the disclosure rule set forth in *Brady* v. *Maryland,* supra, which prohibits suppression of evidence that is favorable to the defendant and material to either the defendant's guilt or punishment. Id., 87. The purpose of the rule is to

ensure that a defendant is not deprived of a fair trial. *United States* v. *Bagley,* 473 U.S. 667, 674–75, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). Evidence is not suppressed within the meaning of *Brady,* however, if it is disclosed at trial as it was here. *State* v. *Rasmussen,* 225 Conn. 55, 91, 621 A.2d 728 (1993); *State* v. *Walker,* 214 Conn. 122, 126, 571 A.2d 686 (1990); *State* v. *Dolphin,* 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). In such a situation, the defendant must demonstrate that the timing of the disclosure prejudiced him to the extent that he was deprived of a fair trial. *State* v. *Walker,* supra, 127; *State* v. *Reddick,* 197 Conn. 115, 122, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). The central issue in this claim, therefore, is whether the evidence was disclosed in sufficient time for the defendant to have effectively used it at trial. *State* v. *Pollitt,* 199 Conn. 399, 414, 508 A.2d 1 (1986). This is essentially a factual determination for the trial court. Id., 414, 416–17; see *State* v. *Pollitt,* 205 Conn. 132, 531 A.2d 125 (1987).

The defendant structures his claim of prejudice on his assertion that the timing of the disclosures of both the identification and the fingerprint evidence prevented him from adequately investigating the possibility that Green or someone else might have been the perpetrator. Further facts are necessary to resolve this claim. The trial began on Wednesday, October 23, 1991, and by the next day, the identification and fingerprint evidence had been disclosed. There was also testimony from a police detective explaining that a police investigation had revealed that Green was in Germany when the bank was robbed. On Friday of that week, while the state's case was still ongoing, the defendant moved for a mistrial or, in the alternative, for a continuance until the following Tuesday.

Without ruling on the motion, the trial court suggested that the parties cooperate in investigating the whereabouts of Green and in determining if the fingerprints either excluded Green or included any other persons that resembled the defendant. To facilitate that investigation, the defendant provided to the state the names of persons who, the defendant claimed, looked like him. The court instructed defense counsel[1] that if he wanted to secure his own fingerprint expert, he should submit a name to the court quickly and the court would then "make the appropriate orders." The court further suggested that defense counsel be permitted to conduct an out-of-court interview with Comstock and Patenaude to provide further details of the Green identification. At the end of the day, the court stated: "There is probably a fifty-fifty possibility that everything might fall in place and we might be able to run right through this on Monday. So, let's see, you both know what you have to do, and I assume that you [will] have done as much as you can by Monday. Come up Monday morning at ten o'clock and let me know what is happening just out of curiosity."

The record does not adequately reveal the degree to which the parties were successful in acting on the court's suggestions.[2] Nevertheless, the parties reported on Monday and when neither party requested a continuance, the state continued with the case.[3] The state

[1] Trial counsel died prior to the appeal.

[2] The record is clear that defense counsel did not secure a fingerprint expert. We note, however, that the defendant was aware, well before trial, that latent fingerprints had been taken and that their quality was poor. Nothing prevented him from obtaining an expert prior to trial to examine the prints in the hope of linking them to another person.

The record is less clear concerning the results of the fingerprint matching involving the defendant's list of look-alikes. It appears that the state cooperated and that no matching prints were found.

[3] Because of our disposition of the case, we do not decide whether the defendant waived his claim regarding his requested continuance to further investigate the whereabouts of Green. See *State* v. *Miner,* 197 Conn. 298, 306, 497 A.2d 382 (1985).

first recalled Comstock to provide a fuller explanation of the circumstances surrounding her identification of Green. Following a short series of questions by the state, the defendant cross-examined her on that topic. The state next called Green's sister who explained, as the police detective had done previously, that Green was in Germany and had been in Germany at the time of the robbery.[4]

At the conclusion of the state's case, the trial court expressed its satisfaction that the issue of prejudice arising from the disclosure of the identification evidence had been effectively dealt with and pointed out that "this person could not, because he is in Germany, have been the bank robber." Defense counsel agreed and observed that the only outstanding issue was the fingerprint on the note and as to that, he said, "Your Honor, at this point I wouldn't claim it." Thereafter, in closing argument, defense counsel cogently brought the exculpatory nature of the evidence to the attention of the jury.

Although neither the identification evidence nor the fingerprint evidence was suppressed in the *Brady* sense, the rules governing suppressed evidence are instructive and applicable in our determination of prejudice. Accordingly, we evaluate the claim by examining the evidence within the broad context of the entire trial. "[T]he courts must avoid concentrating on the suppressed evidence in isolation. Rather, we must place

---

[4] The defendant asks us to take judicial notice of certain evidence adduced at his recent habeas trial. In particular, there was evidence suggesting that the police had investigated a different person than the person appearing in the photograph selected by Comstock and Patenaude and that the person depicted in the photograph was, in fact, not in Germany at the time of the robbery. We are bound to evaluate the propriety of the trial court's rulings on the basis of the facts known to the court at the time of its rulings. We cannot evaluate those rulings through the prism of newly discovered and speculative evidence. The defendant's recourse is through a petition for a new trial.

it in the context of the entire record. Evidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory." *State* v. *Shannon,* 212 Conn. 387, 399–400, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989).

We first note that the issue of Green's possible involvement in the crime was adequately addressed at trial. There was testimony from both the police detective and Green's sister that Green was in Germany at the time of the robbery. In addition, Comstock and Patenaude explained to the jury that they chose Green's photograph because it *resembled* the robber; they did not think Green *was* the robber. Any argument by the defendant that Green, nevertheless, might have been the robber, resides wholly in the realm of speculation and does not substantiate a claim of prejudice. See *State* v. *Miner,* 197 Conn. 298, 305, 497 A.2d 382 (1985). We further note that the impeachment value of Comstock's and Patenaude's identification of Green was effectively exploited by the defendant both in cross-examination and during closing argument. We conclude, therefore, that the timing of this disclosure did not prevent the defendant from receiving a fair trial.

The timing of the disclosure of the fingerprint evidence, likewise, was not prejudicial. This evidence demonstrated that identifiable fingerprints of the defendant were not on the note or at the crime scene. Despite the timing of the disclosure, the defendant was not hindered in drawing the jury's attention to the significance of that fact. The defendant contends, nevertheless, that he was deprived of a fair trial because he needed time to investigate the possibility that the fingerprints might belong to Green or someone else. The defendant has presented nothing to show that anyone else was connected with the robbery. "On this rec-

ord, the defendant's claims of prejudice are purely speculative and cannot furnish a basis for the reversal of his conviction." Id. This is particularly true in light of the other evidence, including the three in-court identifications and the testimony of Green's sister and the police detective that Green was in Germany at the time of the robbery.

The defendant has failed to demonstrate the prejudice necessary to substantiate his *Brady* claim. Accordingly, we do not analyze the defendant's individual claims concerning his requests for a mistrial, continuance and a new trial because they all are founded upon the claimed *Brady* violation.

The judgment is affirmed.

In this opinion the other judges concurred.