STATE OF CONNECTICUT *v.* EDWARD J. ALLEN
(AC 33528)

Robinson, Espinosa and Sheldon, Js.

Argued September 14, 2012—officially released January 29, 2013

*Kathleen E. Rallo*, with whom were *Brian J. Woolf* and, on the brief, *Douglas K. Lindbergh,* for the appellant (defendant).

*David J. Smith,* senior assistant state's attorney, with whom were *Christa L. Baker,* assistant state's attorney, and, on the brief, *Michael L. Regan,* state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Edward J. Allen, appeals from the judgment of conviction, rendered following a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] The defendant claims that (1) the evidence did not support the jury's verdict, (2) the trial court improperly admitted evidence of prior uncharged sexual misconduct and (3) the court, following an in camera review of certain counseling records of the victim,[2] improperly failed to disclose such records to him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, along with her mother and her sister, began to reside with the defendant in Connecticut sometime in 1999, when the victim was approximately six or seven years of age. Beginning in 2000, several incidents of a sexual nature involving the defendant and the victim occurred. In one instance, the victim had a conversation with the defendant about a movie. The defendant discussed different aspects of male and female anatomy, and stated that men insert their penises into women for fun. The defendant proceeded to touch the victim's vagina over her clothing.

In another instance, the victim entered the defendant's bedroom to speak with him. The defendant played a pornographic movie on the television and

_____

[1] The jury found the defendant not guilty of one count of sexual assault in the first degree and one count of risk of injury to a child. The trial court imposed a total effective sentence of eighteen years incarceration, execution suspended after thirteen years, followed by ten years of probation.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

began massaging the victim, ultimately rubbing her vagina over her clothing. Despite the victim's protests, the defendant removed her underwear and inserted a vibrator into her vagina.

In yet another incident, the defendant called the victim into his bedroom where he began massaging her. The defendant exposed his penis and caused the victim to perform oral sex on him until he ejaculated in her mouth.

Days later, the defendant entered the victim's bedroom, sat on the victim's bed with her and began touching her under her pajamas. The defendant removed the victim's pajamas and underwear, exposed his penis and partially inserted his penis into her vagina. Unable to fully penetrate the victim, who was crying and in pain, the defendant pulled himself off the victim and left the bedroom. The defendant told the victim, "don't tell anyone because I can hurt you and your family."

In still another incident, the victim entered the defendant's bedroom and began looking through his dresser. The defendant discovered the victim in the bedroom, guided her to the bed and inserted a vibrator into her vagina. Once again, the defendant warned the victim not to tell anyone about what had occurred. Additional facts will be set forth as necessary.

## I

First, the defendant claims that the evidence did not support the jury's verdict with regard to any of the six counts of which he was found guilty. We disagree.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether

upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 656–57, 1 A.3d 1051 (2010).

In challenging the sufficiency of the evidence, the defendant does not draw our attention to any specific essential elements of the crimes of which he stands convicted. Nor does the defendant dispute that the victim's trial testimony, if deemed to be credible evidence, satisfied the essential elements of the crimes at issue. Rather, the defendant argues that the jury could not reasonably have relied on the victim's incriminating

testimony regarding the events at issue because the victim testified that, for her, there was more than one reality and that she did not know the difference between reality and a nightmare. Also, the defendant argues that the jury could not reasonably have relied on the victim's testimony because the evidence reflected numerous and significant inconsistencies between the victim's trial testimony and statements that the victim made during an August 3, 2006 interview, a videotape of which was admitted into evidence.

The victim was cross-examined vigorously by the defendant's attorney. The defendant's attorney asked her about the differences between her statements on August 3, 2006, and her trial testimony. As the defendant argues, part of the victim's testimony during cross-examination could be interpreted to mean that she has difficulty differentiating between reality and her dreams. Upon further questioning, however, the victim testified, "The things that I've testified I know are real. I'm not going to say something that I'm not sure if it's just a vivid dream or my memory trying to tell me this is real. Everything I've testified is real, is true, is reality." The victim stated that she knew that the events about which she testified were real "[b]ecause every day it goes through my mind and I know it's real." With regard to one incident of alleged abuse, the defendant's attorney asked the victim if she could be certain that the events occurred or whether it was a dream. The victim stated, "I can tell this is reality, not a dream." In responding to an inquiry about her videotaped statement, the victim testified: "At the time, it was reality also . . . ."

The record reflects that the defendant's attorney amply cross-examined the victim concerning her recollection of relevant events, the differences between her trial testimony and her earlier videotaped statement, as well as her ability to recall past events accurately.

These topics were a subject of the defendant's closing argument to the jury.

The fact that the defendant reasonably could argue to the jury that the victim's testimony was not entirely consistent with her videotaped statement or that the victim's testimony possibly exposed a weakness in her ability to recall prior events accurately does not provide this court with a basis upon which to direct a verdict of not guilty. The victim testified that she was able to perceive the prior events accurately, and her testimony concerning those events sufficiently supported the finding of guilt as to the crimes of which the defendant stands convicted. Determining whether this testimony was truthful was a matter for the jury, not this court, to resolve. "It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . If there is any reasonable way that the jury might have reconciled the conflicting testimony before [it], we may not disturb [its] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 559, 958 A.2d 1214 (2008).

## II

Next, the defendant claims that the court improperly admitted evidence of uncharged sexual misconduct the state alleged that he had committed. Within this larger claim, the defendant argues that the court's evidentiary ruling was improper because (1) the uncharged misconduct was dissimilar to the charged misconduct of which he stood accused, (2) the court erred in its gatekeeping role and (3) the prejudicial effect of the evidence outweighed its probative value. We disagree with all aspects of this claim and will address each of them in turn.

Prior to trial, the state filed a notice of intent to offer evidence of uncharged misconduct by the defendant. Specifically, the state gave notice of its intent to present evidence that on various dates between 1993 through 1999, the defendant engaged in sexual intercourse with another minor, J.C. The defendant opposed the motion and filed a motion in limine in which he asked the court to preclude such evidence. In a pretrial hearing in connection with the motion held on February 16, 2011, the state presented the testimony of J.C. outside of the presence of the jury. Also, the state submitted a detailed, written offer of proof to the court concerning the victim's allegations in the present case.

In a thorough decision, the court concluded that the evidence was admissible because it was relevant to demonstrate the defendant's propensity to engage in the type of sexual misconduct with minors of which he stood charged. Also, the court concluded that the evidence was more probative than prejudicial.

As the court observed, the offer of proof concerning the victim revealed the following facts. The female victim was between seven and eleven years of age when the defendant committed the acts at issue. The ten or eleven alleged incidents occurred between 2000 and 2004. The defendant used physical force to perpetrate the sexual acts. The defendant engaged in a pattern of conduct that began with his touching the victim while she was clothed, escalated to his touching of her shoulders and her breasts and ultimately progressed to acts such as penile-vaginal intercourse, digital penetration, cunnilingus and fellatio. Thus, the court found that the allegations of sexual conduct were of "an ascending nature . . . ." These acts occurred in the defendant's residence, including in his bedroom, while the victim was staying at the residence. The defendant showed the victim pornography at the time of the assaults, and his sexual misconduct involved the use of vibrators.

The assaults included the defendant's kissing the victim. Also, the defendant told the victim that if she told anyone about his sexual conduct, she would be in a lot of trouble.

The court discussed the relevant portions of J.C.'s testimony, which encompassed the following facts. J.C. was a female, and the defendant sexually assaulted her ten times when she was between ten and fourteen years of age. J.C. was the defendant's neighbor and lived a few houses away from the defendant but sometimes was at the defendant's residence to perform gardening duties or help the defendant's girlfriend around the house. The defendant's course of sexual conduct began with acts such as kissing and touching over her clothing. The acts progressed to more egregious types of sexual conduct, such as cunnilingus and penile-vaginal intercourse. The defendant assaulted J.C. in his residence, including in his bedroom. J.C. observed pornographic materials and vibrators in the defendant's bedroom, but the defendant neither displayed pornography for J.C. nor utilized a vibrator during his sexual assaults on J.C. The defendant, however, utilized a strap-on dildo during some of his assaults of J.C.

The court concluded that J.C. was similar to the victim, that the acts described by J.C. were similar to those described by the victim and that the acts alleged by J.C. were not too remote in time to be relevant to the present case. The court concluded that although there were some dissimilarities in terms of the characteristics of the alleged victims and the manner in which the assaults occurred, these dissimilarities were not significant for purposes of its analysis. Having concluded that J.C.'s testimony was relevant evidence, it also concluded that the evidence was not more prejudicial than probative for the purpose of demonstrating the defendant's propensity to engage in sexual misconduct with minors. Thus, the court ruled that the state could pre-

sent the evidence concerning J.C., and that it would deliver an appropriate limiting instruction related to the evidence.

Before discussing each aspect of the defendant's claim on appeal, we set forth applicable legal principles, including our standard of review. "Evidence of other crimes, wrongs or . . . acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. Conn. Code Evid. § 4-5 (a). Evidence of other crimes, wrongs or acts of a person is admissible for purposes . . . such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. Conn. Code Evid. § 4-5 (b). In *State* v. *DeJesus*, 288 Conn. 418, 470, 953 A.2d 45 (2008) (en banc) . . . our Supreme Court effectively carved out an additional exception to [those listed in] § 4-5 (b) of the Connecticut Code of Evidence when it recognized a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior. . . .

"[I]n *DeJesus*, the court recognized that evidence routinely admitted under the common plan or scheme exception typically is unrelated to the existence of an overall scheme or plan in the defendant's mind that encompasses the commission of the charged and uncharged crimes . . . [and that] evidence admitted under this standard ordinarily does not fall within the true common scheme or plan exception. . . . Citing a variety of public policy reasons, the court concluded that evidence of uncharged misconduct in sex crime cases may be admitted to demonstrate a defendant's *propensity* to engage in sexual misconduct. . . .

"The court in *DeJesus* determined that evidence of this nature is admissible if three conditions are satisfied.

First, the evidence must be relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. Relevancy is established by satisfying the liberal standard pursuant to which evidence previously was admitted under the common scheme or plan exception. Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness. . . . Second, the evidence must be more probative than prejudicial. . . . In balancing the probative value of such evidence against its prejudicial effect . . . trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity. . . . Third, to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception . . . must be accompanied by an appropriate cautionary instruction to the jury." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *L.W.*, 122 Conn. App. 324, 329–31, 999 A.2d 5, cert. denied, 298 Conn. 919, 4 A.3d 1230 (2010).

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks

omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670–71, 31 A.3d 1012 (2011).

## A

The defendant claims that the admission of J.C.'s testimony was improper because the uncharged misconduct involving J.C. was dissimilar to the charged misconduct with which the defendant stood charged. The defendant asserts that the evidence presented at trial demonstrated that (1) although the defendant attempted to engage in penile-vaginal intercourse with the victim only once, he primarily engaged in this type of sexual conduct with J.C.; (2) the defendant used one or more vibrators during his abuse of the victim but did not use a vibrator during his abuse of J.C.; (3) the defendant forced the victim to perform fellatio on him but did not force J.C. to do so; (4) the defendant displayed pornography during his abuse of the victim but did not display pornography for J.C.; (5) the defendant acted in a violent manner toward the victim but not toward J.C.; and (6) the defendant abused the victim when she was seven years of age and abused J.C. when she was between ten and fifteen years of age.

As a preliminary matter, we disagree with the defendant's characterization of the evidence that is relevant to our analysis. In evaluating whether the court properly ruled that the uncharged misconduct evidence was admissible, we look to the evidence presented to the court at the time it made that ruling.[3] See *State* v. *Harris*, 32 Conn. App. 476, 481 n.4, 629 A.2d 1166 ("[w]e are bound to evaluate the propriety of the trial court's rulings on the basis of the facts known to the court at the time of its rulings"), cert. denied, 227 Conn. 928, 632 A.2d 706 (1993). The state represented that the defendant engaged in penile-vaginal intercourse with the victim ten or eleven times. Further, the state represented

---

[3] The defendant does not argue that the court should have reconsidered its decision in light of the victim's trial testimony.

that the defendant abused the victim when she was between seven and eleven years of age. During her pretrial testimony in connection with the state's written motion to present the uncharged misconduct, J.C. testified that the defendant abused her sexually when she was between nine and fifteen years of age.

"Our review of the relevant case law reflects that there is no bright line test for determining whether alleged acts of uncharged sexual misconduct and those involving the complaining witness in a sexual assault case are sufficiently similar. What is clear, however, is that the law requires *similar* acts of misconduct, not *identical* acts of misconduct." (Emphasis in original.) *State* v. *L.W.*, supra, 122 Conn. App. 333.

The evidence before the court at the pretrial hearing demonstrated that the defendant abused the female victim, who was living in his residence, when she was between seven and eleven years of age. The evidence demonstrated that the defendant abused J.C., a female, when she was between nine and fifteen years of age. J.C. was a neighbor of the defendant and frequently was at his residence. Insofar as the defendant's argument appears to be based on the dissimilarity of the victim and J.C., we conclude that the court did not abuse its discretion by concluding that the uncharged misconduct was committed against a victim who was similar to the complaining witness.

The evidence before the court demonstrated that the defendant sexually abused the victim in his residence, including in his bedroom. The defendant also exhibited pornographic images for the victim to observe, touched the victim in a sexual manner, masturbated in the victim's presence, performed oral sex on the victim, forced the victim to perform oral sex on him, used vibrators to penetrate the victim and engaged in penile-vaginal intercourse with the victim on numerous occasions.

The evidence before the court demonstrated that the defendant sexually abused J.C. in his residence, including in his bedroom. The defendant touched J.C. in a sexual manner, performed oral sex on J.C., used a strap-on dildo in some of his assaults and engaged in penile-vaginal intercourse with J.C. On this record, we readily conclude that the evidence of uncharged misconduct was sufficiently similar to the conduct at issue involving the victim. For the foregoing reasons, we conclude that the court did not abuse its discretion in concluding that the uncharged misconduct evidence was sufficiently similar, and thus relevant, to the issues related to the misconduct with which the defendant stood charged.

## B

Next, the defendant claims that the court erred in its gatekeeping role as it related to the admission of the uncharged misconduct evidence. Specifically, the defendant argues that the court had an obligation, in its gatekeeping role, to preclude the state from presenting J.C.'s testimony because "it was determined, through discovery and through cross-examination at a preliminary hearing, that J.C. had, and admitted to, filing a false police report regarding the alleged 'prior misconduct' attacks." Additionally, the defendant asserts that "it was clearly shown that she lacked credibility and had a history of making false accusations regarding sexual assaults."

Previously, we discussed the test for admissibility enunciated by our Supreme Court in *DeJesus*. It requires a showing that the evidence is relevant to demonstrate the defendant's propensity to engage in the sexual acts with which the defendant stands charged and that its probative value is not outweighed by its prejudicial effect upon the finder of fact. *State* v. *DeJesus*, supra, 288 Conn. 473. In crafting this test for admissibility, our Supreme Court did not require a

showing that the prior misconduct in fact occurred or that the evidence related to the prior misconduct satisfy a heightened standard of reliability rather than that applicable to evidence generally. Our case law does not support the defendant's argument. In *State* v. *Aaron L.*, 272 Conn. 798, 819–27, 865 A.2d 1135 (2005), our Supreme Court rejected a claim that prior misconduct evidence, to be admissible, must first be shown by clear and convincing evidence to have occurred. The court reasoned: "[W]e decline to adopt a rule requiring that the trial court make a preliminary finding by clear and convincing evidence that prior misconduct occurred before submitting that evidence to the jury. Thus, once a trial court determines that an act of prior misconduct is material and relevant to the charges at trial, and that its probative value outweighs its prejudicial effect, the evidence is admissible." Id., 824.

"We are mindful that a trial court, in considering whether there is evidence from which the jury reasonably could conclude that the defendant actually committed the prior act of misconduct, acts as an evidentiary gatekeeper when considering the admissibility of such evidence. . . . [A]s a gatekeeper, the trial court . . . considers whether evidence reasonably supports the finding for which it is offered." (Citations omitted.) *State* v. *Cutler*, 293 Conn. 303, 319 n.17, 977 A.2d 209 (2009). "[I]t has long been established that a court maintains the obligation to ensure [only] that a witness' testimony meets the *minimum* standard of credibility necessary to permit a reasonable person to put any credence in that testimony. . . . Whether evidence is admissible is a question of law that is determined according to the rules of evidence. Whether the burden of persuasion has been met and the weight to be accorded to the evidence are questions of fact to be determined by the trier of fact." (Citation omitted; emphasis in original; internal quotation marks omitted.)

*State* v. *Ritrovato*, 280 Conn. 36, 51–52, 905 A.2d 1079 (2006).

We carefully have reviewed all of the evidence and arguments presented to the court concerning J.C.'s testimony. After the court heard testimony from J.C. and granted the state permission to present the uncharged misconduct evidence on February 16, 2011, the defendant filed a motion for reconsideration of that decision. The defendant's March 16, 2011 motion for reconsideration was premised on the ground that newly discovered evidence concerning J.C. raised significant issues related to her credibility, such that "she should not . . . be allowed to testify." On March 21, 2011, the court held an evidentiary hearing related to the motion for reconsideration. At the hearing, the defendant presented the newly discovered evidence regarding J.C.'s testimony on which he relied. Specifically, the defendant presented evidence that on an earlier occasion, J.C. told the police and others that another individual, not the defendant, had committed the sexual misconduct that she presently alleged to have been committed by the defendant. This testimony contradicted the testimony that J.C. provided at the earlier pretrial hearing.

The court upheld its earlier decision to permit the state to present J.C.'s testimony. The court accurately acknowledged that the defense had grounds by which to impeach J.C.'s testimony concerning the defendant, namely, the issue of J.C.'s false statements. Nonetheless, the court observed that J.C. explained the circumstances surrounding her earlier statements and testified in the present proceeding that the defendant had committed the prior misconduct about which she testified. The court reasoned that these issues related to credibility were fodder for the jury's consideration and concluded that a jury may believe her testimony in the

present case. Recognizing the minimal standard inherent in the court's gatekeeping function, we readily conclude that the testimony of J.C. tended to support the fact for which it was offered, namely, that the defendant had engaged in prior sexual misconduct, and that a reasonable jury could have deemed her testimony to be credible. The weaknesses in J.C.'s testimony, which were amply brought to light by the defendant, both in argument related to the admissibility of J.C.'s testimony and, later, at trial, were fodder for the jury's consideration, but such arguments did not affect the admissibility of the evidence.

## C

The defendant claims that the court improperly admitted the evidence because its prejudicial effect outweighed its probative value. "Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest

or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Dillard*, 132 Conn. App. 414, 425–26, 31 A.3d 880 (2011), cert. denied, 303 Conn. 932, 36 A.3d 694 (2012).

"Although evidence of child sex abuse is undoubtedly harmful to the defendant, that is not the test of whether evidence is unduly prejudicial. Rather, evidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant *beyond tending to prove the fact or issue that justified its admission into evidence.* . . . As explained in *DeJesus*, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Antonaras*, 137 Conn. App. 703, 722–23, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012).

Here, in summary fashion, the defendant asserts that the uncharged misconduct evidence was *unduly* prejudicial because "[t]he uncharged sexual misconduct as to J.C. was materially and qualitatively dissimilar to that [related to] the offenses charged involving [the victim] in that it consisted of numerous instances of penile-vaginal intercourse, whereas there was [evidence of] just one alleged instance of attempted penile-vaginal intercourse involving [the defendant and the victim]. Thus, the alleged prior uncharged sexual misconduct involving J.C. was far more egregious than that concerning [the victim] . . . ."

Having reviewed the offer of proof submitted by the state at the time that the court ruled on the admissibility

of the evidence[4] as well as the testimony of J.C., we conclude that the uncharged misconduct evidence was not more egregious than the evidence related to the charged misconduct such that it was unduly prejudicial. As discussed in part II A of this opinion, the offer of proof concerning the victim included the display of pornography, inappropriate touching, penetration of the victim with the use of vibrators, cunnilingus, penile-oral intercourse, masturbation by the defendant and numerous instances of penile-vaginal intercourse. On this record, we conclude that the court did not abuse its discretion in concluding that the uncharged misconduct evidence was not more egregious than the charged misconduct and, therefore, was not more prejudicial than probative.

Furthermore, the record reflects that during trial and during the court's final charge the court delivered a detailed instruction to the jury that limited its use of the uncharged misconduct evidence to its proper evidentiary purpose. These instructions, the substance of which is not challenged on appeal, mitigated any prejudicial impact of the evidence beyond the proper purpose that justified its admission.

### III

Finally, the defendant claims that the court, following an in camera review of certain counseling records of the victim, improperly failed to disclose such records to him. We disagree.

The defendant requested the disclosure of the victim's medical records, including psychological or psychiatric records, or that such records be disclosed for an in camera review by the court. The state provided certain counseling records of the victim to the court.

---

[4] See footnote 3 of this opinion.

At trial, the defendant sought disclosure of *any* information related to the victim's allegations. Following an in camera review of the records, the court ruled that, under the standard set forth in *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984), they did not contain information that should be disseminated to the defense. The court properly ordered the records to be sealed and made part of the record as a court exhibit. The defendant, questioning whether the records contained information that might have been useful to the defense in confronting the victim at trial, invites this court to review the sealed records for the purpose of determining whether the trial court abused its discretion in failing to disclose such records to the defense.

"Connecticut has a broad psychiatrist-patient privilege that protects the confidential communications or records of a patient seeking diagnosis and treatment. . . . Our Supreme Court has held that records and communications between a sexual assault victim and a sexual assault counselor are similarly protected and subject to the *Esposito-Bruno*[5] procedure before such information may be disclosed to the defendant. . . .

"The victim's right to privacy in such cases, however, often directly conflicts with the defendant's right to confront the state's witnesses. The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. . . . It is expressly protected by the sixth and fourteenth amendments to the United States constitution . . . and by article first, § 8, of the Connecticut constitution. . . . The defendant is guaranteed more than an opportunity to confront witnesses physically. . . . The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him . . . and to expose to the jury the

---

[5] See *State* v. *Bruno*, 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), and *State* v. *Esposito*, supra, 192 Conn. 166.

facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witnesses. . . .

"In *Esposito*, our Supreme Court struck a balance between the confidentiality of psychiatric records and the defendant's right to confrontation, concluding: If . . . the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal. . . .

"On review, we must determine whether the court's decision constituted an abuse of discretion. . . . This court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release those records to the defendant. . . . While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not

privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." (Citations omitted; internal quotation marks omitted.) *State* v. *Tozier*, 136 Conn. App. 731, 751–53, 46 A.3d 960, cert. denied, 307 Conn. 925, 55 A.3d 567 (2012).

We carefully have reviewed the sealed records at issue. On the basis of that review, we agree with the court that they do not contain information that would have been useful to the defense. The records do not contain evidence that tended to discredit the victim's testimony, her capacity to testify or her reliability as a witness in this case. Accordingly, we conclude that the court's decision not to disclose the records did not reflect an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.