[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE (#108) AND PLAINTIFF'S MOTION FOR SANCTIONS (#109)
The plaintiff, Andrew Lance, is a New York attorney who allegedly facilitated a commercial real estate transaction in conjunction with the defendant, Ronald Lyman, pursuant to an alleged co-brokerage agreement. The plaintiff brings this action to recover damages as the result of the defendant's alleged breach of the co-brokerage agreement as well as violations of the Connecticut Unfair Trade Practices Act ("CUTPA").
The plaintiff alleges in the amended complaint, that the defendant was in an exclusive agency agreement with a third party (hereinafter "R. Realty"), by which R. Realty agreed to pay defendant a commission of 10% of any gross sales price and 10% of any gross rent. The plaintiff, as attorney for a prospective buyer of the realty, allegedly entered into an oral co-brokerage agreement whereby the plaintiff "agreed to obtain Defender Industries, Inc., as a buyer for the aforementioned property and CT Page 10012 to negotiate on behalf of Defender Industries, Inc., and Defendants agreed to pay to Plaintiff one-half [50%] of whatever commissions were collected from the sale of the property to Defender." Amended Complaint, Count I ¶ 3. The plaintiff alleges that the sale was finally consummated with his client as the purchaser, and that the defendant has breached the co-brokerage agreement by refusing to pay 50% of the commission to him.
Presently before the court is the defendant's motion to strike both counts of the complaint. In addition to opposing the defendant's motion, the plaintiff moves this court to issue sanctions against the defendant for bringing, what he considers, a frivolous motion.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
The defendant moves to strike the first count of the amended complaint on the ground that the plaintiff is barred from receiving a real estate commission because he does not possess a Connecticut real estate license. The plaintiff argues that the licensing requirements do not apply to the transaction which is the subject of the co-brokerage agreement, and that he is exempt from those provisions.
Chapter 392 of the General Statutes contains the relevant licensure requirements for real estate transactions. "There is no question that the licensing provisions of chapter 392 are designed to allow supervision and regulation of the real estate business and make possible the elimination of the incompetent and unscrupulous agent." (Internal quotation marks omitted.) Colli v.Real Estate Commission, 169 Conn. 445, 451 (1975) "No person shall act as a real estate broker, real estate salesman, real estate appraiser or residential appraiser without a license issued by the commission, unless exempted by the provisions of this chapter." General Statutes § 20-312 (a). "No person who is not licensed under the provisions of this chapter, and who was CT Page 10013 not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter. . . . The provisions of this section shall not apply to any person excepted from the provisions of this chapter by section20-329. . ." General Statutes § 20-325a. Because the plaintiff alleges that his function was to obtain a purchaser and to negotiate on behalf of said purchaser, see Amended Complaint, Count I ¶ 3, he was acting as a "real estate broker" and was "engaged in the real estate business" as defined in § 20-311. "Real estate broker" is defined in § 20-311 (1) as a person who "lists for sale, sells, exchanges, buys or rents, or offersor attempts to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate." (Emphasis added.) General Statutes § 20-311 (1). "`Engaging in real estate business' means acting for another and for a fee, commission or other valuable consideration in the listing for sale, selling, exchanging, buying or renting, or offering or attempting tonegotiate a sale, exchange, purchase or rental of, an estate or interest in real estate." (Emphasis added.) General Statutes § 20-311 (3). Based on the plaintiff's allegations as to his role in the transaction, this court finds that he was acting as a "real estate broker" and "engaging in the real estate business" and, therefore, is subject to the licensure requirements of §20-312 and restrictions of § 20-325a.
Citing § 20-329 (a), however, the plaintiff argues that he is exempted from the requirements of § 20-312 and the restrictions of § 20-325a because he is a licensed "attorney-at law." According to the plain language of § 20-329 (a), the plaintiff's assertion that he is exempt is correct. Section20-329 (a) provides: "The provisions of this chapter concerning the licensure of real estate brokers and real estate salesmen shall not apply . . . to service rendered by any attorney-at law in the performance of his duties as such attorney-at-law." General Statutes § 20-329. The amended complaint states that plaintiff "was an individual attorney at law of the State of New York who was representing Defender Industries, Inc. Amended Complaint, Count I ¶ 1. When read in light of the circumstances stated in the complaint as a whole, the reasonable implication of this allegation is that the plaintiffs rendition of services for CT Page 10014 the subject real estate transaction was "in the performance of his duties as such attorney-at-law." See General Statutes §20-329 (a). The plaintiff, therefore, as an attorney-at-law who allegedly performed duties as such attorney-at-law, is exempted from the licensure requirements of § 20-312 and the restrictions on his collecting a commission under § 20-325a.
Accordingly, the plaintiff is not barred by either §20-312 or § 20-325a from pursuing this action for the defendants breach of a co-brokerage agreement to split commissions and, therefore, the defendant's motion to strike the first count is denied.
The defendant also moves to strike the second count of the amended complaint, which alleges a violation of CUTPA. As grounds for his motion, the defendant states: (i) that the allegations merely indicate a breach of contract which cannot form the basis for a CUTPA violation; and (ii) that enforcement of such a contract would be against public policy because the plaintiff does not possess a Connecticut real estate license. In opposition to the motion, the plaintiff argues that the defendant's conduct goes beyond breach of contract. Specifically, the plaintiff argues that because the defendant allegedly acknowledged his co-brokerage agreement with the plaintiff in a separate lawsuit in which the defendant sued R. Realty for collection of the commission, the defendant's present disavowal of that agreement rises to the level of immoral, unethical or unscrupulous conduct.
"A simple breach of contract, even if intentional, does not amount to a violation of CUTPA. A claimant must show substantial aggravating circumstances attending the breach to recover under [CUTPA]." (Internal quotation marks omitted.) Messler v. BarnesGroup, Superior Court, judicial district of Hartford at Hartford, Docket No. 560004 (February 1, 1999, West, J.) A CUTPA count must "set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy." (Internal quotation marks omitted.) Arrowhead bythe Lake Association v. Arrowhead, Superior Court, judicial district of Waterbury, Docket No. 128458 (January 21, 1999, West, J.).
In the present case, the CUTPA count merely incorporates by reference the allegations comprising the breach of contract count, and summarily concludes that the defendant's conduct amounts to a violation of CUTPA. "A conclusory statement such as CT Page 10015 this, without further elaboration as to how or why the acts complained of are immoral, oppressive and unscrupulous is not sufficient to fashion a CUTPA claim out of the simple breach of contract claim." Shoreline Vending Service v. Huey, Superior Court, judicial district of Middlesex at Middletown, Docket No. 073936 (March 15, 1996, Stanley, J.). The court finds that the allegations are legally insufficient to state a claim under CUTPA.
The plaintiff, however, urges this court to consider the fact that the defendant has admitted the existence of his cobrokerage agreement with the plaintiff in a separate lawsuit. This fact, the plaintiff argues, makes it immoral and unethical for the defendant to now assert in the present case that the plaintiff is not entitled to a commission under the cobrokerage agreement.
This court finds the plaintiff's argument unpersuasive. First, the amended complaint contains no allegations to that effect. Second, the CUTPA violation must stem from acts relating to the contract itself, not the defendant's alleged subsequent conduct in a separate lawsuit.
Accordingly, the court finds the CUTPA count to be legally insufficient and, therefore, grants the defendant's motion to strike the second count.
As a final matter, the plaintiff moves this court to issue sanctions against the defendant for filing what he considers a frivolous motion. As grounds for his motion, the plaintiff states that because the court has already denied a request to revise the complaint relating to the plaintiff's real estate license, the defendant's motion to strike is merely duplicative of the arguments raised in his request to revise. Specifically, the court, Hurley, J., sustained the plaintiff's objection to the defendant's request for the plaintiff to revise the complaint so as to state whether the plaintiff was a licensed real estate broker or salesperson under § 20-311.
"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Rules of Professional Conduct 3.1. "Decisions on the entry of such sanctions rest within the sound discretion of the trial court." Rullo v. General Motors Corp. , 208 Conn. 74, 78, CT Page 10016543 A.2d 279 (1988)
Because the court's ruling on the defendant's request to revise has no bearing on the defendant's present substantive attacks on the legal sufficiency of the amended complaint, this court does not deem the defendant's motion to strike as frivolous.
"The request to revise is a [request] for an order directing the opposing party to revise his pleading in the manner specified . . . Although the request to revise may not ordinarily be used to substantively challenge a pleading, it may be used to delete otherwise improper allegations from a [pleading] . . . The motion to strike, on the other hand, challenges the legal sufficiency of the pleading." (Citations omitted; internal quotation marks omitted.) Doe v. Marselle, 38 Conn. App. 360,363, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845,675 A.2d 835 (1996).
Accordingly, the court denies the plaintiff's motion for sanctions.
Mihalakos, J.