******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* VERE C.[1]
(AC 36407)

Alvord, Keller and Harper, Js.

*Argued April 10—officially released August 26, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Kavanewsky, J.)

*Janice N. Wolf*, assistant public defender, for the
appellant (defendant).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *John C. Smriga*, state's attor-
ney, and *Cornelius P. Kelly*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Vere C., appeals from the judgment of conviction, rendered following a jury trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and one count each of attempt to commit sexual assault in the first degree in violation of General Statutes § 53a-49 (a) (2) and § 53a-70 (a) (1), attempt to commit risk of injury to a child in violation of General Statutes § 53a-49 (a) (2) and § 53-21 (a) (2), and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) or (B).[2] This case concerns offenses committed by the defendant against three minor children, namely, S.G., N.W., and K.C. The defendant claims that (1) the trial court improperly admitted certain prior misconduct evidence, (2) the court improperly admitted certain constancy of accusation evidence, (3) the court improperly limited his cross-examination of a witness, (4) his conviction under three counts of the state's amended substitute information violated his constitutional right to a unanimous jury verdict, (5) the court improperly denied his motion to sever certain counts of the information, and (6) the evidence was insufficient for a conviction under two counts of the information. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. When S.G. was approximately five years old in the spring of 2003, she was living with her mother, U.G., in an apartment in Bridgeport. At about this time, the defendant moved into an adjacent apartment with his girlfriend, M.S., and three minor children: M.S.' son, N.W., who was approximately one year older than S.G.; the defendant's son, K.C., who was approximately one year older than S.G.; and the defendant's daughter, S.F., who was approximately four to five years older than S.G. The defendant began a relationship with U.G. and, in 2005, both U.G. and M.S. gave birth to children who were fathered by the defendant.

The defendant began providing child care for S.G., S.F., N.W., and K.C. during the week and on weekends while M.S. and U.G. worked outside of the home. After this child care arrangement began, the defendant began to sexually abuse S.G. during a series of incidents that occurred over the next several years.

During one incident, S.G. was playing with S.F. when the defendant entered the room, physically restrained S.G. on a bed, removed his pants, and attempted to undress S.G. S.G. pulled away from the defendant, who proceeded to undress S.F. before physically and sexually abusing her while S.G. watched. The defendant

made S.G. promise not to tell anyone what had occurred.

In a second incident, S.G. was alone with S.F. when the defendant, who was not wearing pants, entered the room. The defendant held S.G. and S.F. and forced them to perform oral sex on him.

In a third set of incidents, the defendant compelled N.W. to undress and insert his penis into S.G.'s vagina. At one point during this incident, he pushed N.W. so that he could perform this act. N.W. submitted to the defendant because he had been physically assaulted by the defendant, he had observed the defendant physically assault others, and he feared retribution from the defendant. Also, the defendant compelled S.G. to undress while K.C. touched S.G.'s private parts. The defendant pushed and verbally insulted K.C. during this incident, and K.C. complied with the defendant because he feared physical retribution if he did not do so.

In a fourth set of incidents, which occurred after the defendant began to live with U.G., the defendant forced S.G. to perform oral sex on him, typically in a closed room. The defendant threatened to harm S.G.'s family if she told anyone about the abuse, and S.G. feared physical abuse by the defendant.

A fifth incident occurred when S.G. was eight years of age. S.G. and the defendant returned from a fishing trip at which time the defendant physically restrained her on a bed, removed her pants, and inserted his penis into her vagina. Again, S.G., fearing the defendant, did not report the abuse.

The sixth set of incidents, which occurred when S.G. was approximately ten years old, took place at S.G.'s residence when the defendant would visit her family. These incidents consisted of forcible vaginal intercourse with S.G. The last of these incidents occurred after Christmas, 2009. S.G. continued to remain silent in the face of the defendant's sexual assaults because she feared that he would physically retaliate against her or her family. Additional facts will be set forth as necessary.

I

First, the defendant claims that the court improperly admitted certain prior misconduct evidence related to his sexual abuse of S.F. Specifically, the defendant claims that the court improperly admitted testimony from S.G. that, in connection with the first incident described previously in this opinion, after the defendant attempted to assault her in S.F.'s bedroom, she witnessed the defendant remove his pants, climb on top of S.F., remove S.F.'s clothing, and that he "pretty much raped [S.F.] . . . ." We do not agree that this evidence was improperly admitted.

The record reflects that, prior to the presentation of

evidence at trial, the court heard the state's proffer with regard to the uncharged misconduct evidence at issue. As relevant to this claim, the state argued that it intended to present evidence that the defendant "tried to do something with [S.G.], was unsuccessful and then [S.G.] saw the defendant, as she puts it, hump [S.F.]." The defendant's attorney objected to this evidence. The defendant's attorney argued that the incident described therein was remote in time because, given the lack of precision as to the dates on which the charged offenses were committed, it may not have occurred close in time to when the defendant committed the crimes with which he was charged. Also, the defendant's attorney argued that S.F. was too dissimilar to S.G. to warrant the admission of the evidence because S.F. was four or five years older than S.G., and was the defendant's biological daughter.

The court admitted the uncharged misconduct testimony pursuant to *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008) (en banc), as evidence of the defendant's criminal propensity to engage in sexual misconduct. The court found that the incident at issue was not remote in time in relation to the other acts of charged misconduct in this case. The court found that the sexual conduct at issue, against a minor, was similar to the charged offenses; the court stated: "You know, in a nutshell, the claim is that the defendant sexually abused not simply the complaining witness or witnesses here, but another witness at or about the same time in circumstances similar to that of the complaining witness . . . ." The court indicated that it would deliver a limiting instruction.[3]

We begin our analysis of the court's ruling by setting forth the applicable legal principles. "Evidence of other crimes, wrongs or . . . acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. Conn. Code Evid. § 4-5 (a). Evidence of other crimes, wrongs or acts of a person is admissible for purposes . . . such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. Conn. Code Evid. § 4-5 (b). In *State* v. *DeJesus*, [supra, 288 Conn. 470] . . . our Supreme Court effectively carved out an additional exception to [those listed in] § 4-5 (b) of the Connecticut Code of Evidence when it recognized a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis in original; internal quotation marks omitted.) *State* v. *Allen*, 140 Conn. App. 423, 432, 59 A.3d 351, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

In *DeJesus*, the court recognized that evidence in sex

crime cases routinely admitted under the common plan or scheme exception typically is unrelated to the existence of an overall scheme or plan in the defendant's mind that encompasses the commission of the charged and uncharged crimes, and that evidence admitted under this standard ordinarily does not fall within the true common scheme or plan exception. See *State* v. *DeJesus*, supra, 288 Conn. 466–68. "Citing a variety of public policy reasons, the court concluded that evidence of uncharged misconduct in sex crime cases may be admitted to demonstrate a defendant's *propensity* to engage in sexual misconduct. . . .

"The court in *DeJesus* determined that evidence of this nature is admissible if three conditions are satisfied. First, the evidence must be relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. Relevancy is established by satisfying the liberal standard pursuant to which evidence previously was admitted under the common scheme or plan exception. Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness. . . . Second, the evidence must be more probative than prejudicial. . . . In balancing the probative value of such evidence against its prejudicial effect . . . trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity. . . . Third, to minimize the risk of undue prejudice to the defendant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception . . . must be accompanied by an appropriate cautionary instruction to the jury. . . .

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Allen*, supra, 140 Conn. App. 432–33.

On appeal, the defendant argues that the evidence was inadmissible because (1) S.G. and S.F. are not similar to each other due to differences in their age and in their relationship to the defendant, (2) the nature of the misconduct involving S.F. was not similar to the

charged misconduct in this case, and (3) the prejudicial effect of the evidence outweighed any probative value of the evidence.

Here, the court reasonably concluded that the victims were similar enough to warrant the admission of the evidence. The charged misconduct involved S.G., another female child who was only four to five years younger than S.F. The male victims, N.W. and K.C., were approximately one year older than S.G. All of the victims in this case, like S.F., were left in the defendant's care, and the allegations reflected that the defendant abused the victims while they were in his care. The evidence reflects that, at one point, the defendant was in a sexual relationship with the mothers of the victims as well as the mother of S.F. Accordingly, the defendant is unable to demonstrate that it was unreasonable for the court to have determined that S.F. was similar to the victims in this case.

We likewise reject the defendant's argument that the uncharged misconduct was too different from the charged misconduct to warrant its admission under *DeJesus*. "[T]here is no bright line test for determining whether alleged acts of uncharged sexual misconduct and those involving the complaining witness in a sexual assault case are sufficiently similar. What is clear, however, is that the law requires *similar* acts of misconduct, not *identical* acts of misconduct." (Emphasis in original.) *State* v. *L.W.*, 122 Conn. App. 324, 333, 999 A.2d 5, cert. denied, 298 Conn. 919, 4 A.3d 1230 (2010). When the court heard argument concerning this evidence, the state indicated that S.G. would testify that, during the incident at issue, the defendant was unsuccessful in his attempt to undress her and that she then observed him "humping [S.F.]." During her testimony, S.G. testified that the defendant threw her on a bed, got on top of her, tried to remove her clothing, and that she "managed to get out of the room before he raped me." S.G. testified that the defendant remained in the room with S.F., and that subsequently she observed the defendant "get on top of her and take her clothes off." She stated that the defendant "pretty much raped [S.F.] . . . ." In light of all of the evidence of the manner in which the defendant committed sexual assaults of S.G., the court reasonably could have determined that the uncharged misconduct witnessed by S.G. was similar in nature to one or more of the acts of charged misconduct in this case.[4]

Finally, the defendant argues that the evidence was unduly prejudicial because S.F. is his biological daughter, the state's case was not strong due to S.G.'s inability to recall specific ages and dates when abuse occurred, and the court's limiting instructions were inadequate. Of these contentions, the only one that is relevant to a reasoned evaluation of the character of the evidence is that S.F. is the defendant's biological daughter. The evidence, of course, was probative simply because it

was evidence of the defendant's proclivity to sexually abuse children, particularly those in his care. It was particularly probative because it was sexual misconduct that occurred just moments after S.G. fled from the defendant, and it occurred in her presence. The evidence tended to explain S.G.'s feelings of fear toward the defendant because she observed him striking and sexually abusing another female child. Although the evidence was prejudicial in that it involved the defendant's sexual abuse of his daughter, in light of the other evidence of the defendant's sexual misconduct toward S.G., K.C., and N.W., we are not convinced that it was unduly prejudicial. The evidence of the defendant's conduct toward S.F. was no more egregious than the evidence of the defendant's sexual conduct toward S.G., a younger child, which included instances of oral and vaginal intercourse. See, e.g., *State* v. *Allen*, supra, 140 Conn. App. 440–41 (uncharged misconduct evidence not unduly prejudicial when not more egregious than evidence related to charged misconduct). The defendant's contention concerning weaknesses in S.G.'s ability to recall ages and dates when abuse occurred is not compelling in light of her tender age when the abuse at issue occurred.

Furthermore, we are not persuaded by the defendant's argument, raised for the first time on appeal, that the evidence was unduly prejudicial because the court's limiting instruction was ineffective. We note that in this appeal the defendant has not properly raised a challenge to the propriety of the court's limiting instruction, but discusses this issue in terms of undue prejudice in the admission of the uncharged misconduct evidence. The record reflects that the court delivered a limiting instruction concerning the prior uncharged misconduct during S.G.'s testimony, during S.F.'s testimony, and during its final charge to the jury. These instructions, viewed in their entirety, adequately conveyed to the jury that the evidence, if believed by the jury, was relevant to demonstrating the defendant's predisposition to commit the charged sexual offenses, and that it was not evidence that the defendant committed the charged offenses. Accordingly, the instructions, viewed as a whole, tended to reduce the prejudice of which the defendant complains. In light of the foregoing, we conclude that the court's admission of the uncharged misconduct evidence did not reflect an abuse of its discretion.

II

Next, the defendant claims that the court improperly admitted certain constancy of accusation evidence, namely, testimony from S.F.'s mother, E.F., relating to complaints made by S.F. We disagree.

The following facts underlie this claim. As set forth in part I of this opinion, the court permitted the state to present evidence of uncharged misconduct by the

defendant involving S.F. S.F. testified concerning the incident observed by S.G. in which the defendant assaulted her on the bed. S.F. testified that, while she was living at the residence at which this assault occurred, the defendant frequently beat her and engaged in sexual activities with her. Also, S.F. described an incident during which the defendant made her and S.G. perform oral sex on him at the same time. S.F. testified that when she was living in New York State, she provided information to E.F. about the abuse, and that a complaint was filed with the police.

At trial, E.F. testified about the period of time in which S.F. resided with the defendant. E.F. testified that, later, in 2005, after S.F. began to live with her in New York, she questioned S.F. with regard to certain behavioral issues, and that S.F. conveyed to her that something of a sexual nature happened when she lived with the defendant. The defendant's attorney objected to this testimony on the ground that E.F. appeared to be providing what was akin to constancy of accusation testimony concerning S.F., who was not a complainant in the present prosecution. The defendant's attorney stated that he did not believe that evidence of this nature was appropriate, but he could not provide the court with any authority for his objection. The court overruled the objection on the ground that it was unaware of any authority that barred the testimony. Thereafter, E.F. testified that S.F. told her that the defendant was responsible for things of a sexual nature, and that the very next day she made a complaint with the Bridgeport Police Department. E.F. testified that the report did not result in an arrest.

As he did at trial, the defendant claims that the court abused its discretion in admitting this evidence. He argues that E.F. was not a constancy of accusation witness for any of the complainants in this case, but that her testimony related to S.F., who merely was a noncomplaining prior misconduct witness.

"Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be over-turned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 831, 789 A.2d 531 (2002). Under Connecticut Code of Evidence § 6-11 (c), "[a] person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the

victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes." Under the controlling case law, "any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge . . . ." *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996).

The parties have not directed us to, nor have we found, any authority directly on point in which the court admitted constancy of accusation testimony in the context of uncharged misconduct. Although the defendant urges us to interpret the word "victim" in our prior case law and the Connecticut Code of Evidence to refer solely to the complaining victim in a sexual assault case, we, like the trial court, are not persuaded that such a narrow interpretation is required.

Nonetheless, we need not resolve this novel evidentiary issue because, in the present case, the defendant is unable to successfully undermine the judgment because he is unable to demonstrate that any error in the admission of the evidence was harmful. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the [impropriety] was harmful. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless [is] . . . whether the jury's verdict was substantially swayed by the error. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Graham S.*, 149 Conn. App. 334, 341–42, 87 A.3d 1182, cert. denied, 312 Conn. 912,      A.3d      (2014).

E.F.'s testimony, insofar as it disclosed the fact that S.F. made similar accusations concerning the defendant, merely was cumulative. Testimony from S.G. and K.C. supported a finding that S.F. made similar accusations concerning the defendant. Furthermore, at trial, the parties agreed to a stipulation of fact, which the court read to the jury as follows: "During the course of testimony in the state's case-in-chief, there has been reference to [E.F.] making a complaint to the Bridgeport

police in 2005 concerning a disclosure made to her by her daughter, [S.F.]. The parties, both the defense and the state, stipulate to the following concerning that issue: That a complaint was made to the Bridgeport Police Department on September 5, 2005, by [E.F.]; that the defendant was arrested for matters in this prosecution on or about December 22, 2010; that due to Connecticut statute of limitations, [S.F.] is not a complainant that you need to consider in your deliberations. You are not to speculate the reasons for this, but ask you to keep in mind the limited purpose and admonitions the court gave to you when her testimony was offered." E.F. did not provide any testimony that bore on the material issues of fact before the jury concerning the alleged sexual abuse of the complainants in the present case. Her testimony was merely cumulative of the undisputed fact that S.F. made allegations of abuse against the defendant in 2005, and that such allegations did not result in the defendant's arrest. And, as the defendant emphasizes, the testimony of E.F., at best, strengthened the jury's assessment of a witness, S.F., who, herself, provided prior misconduct evidence. The defendant does not assert that he was unable to cross-examine E.F., and the state presented ample evidence, apart from E.F.'s testimony, that supported a finding of guilt. On this record, we conclude that any error in the admission of the testimony was harmless because it cannot be said that E.F.'s testimony likely swayed the jury as it reached its verdict.

III

Next, the defendant claims that the court improperly limited his cross-examination of S.G. with regard to a false statement she made about her mother, U.G. The defendant argues that the court's ruling deprived him of his right to confront his accuser, as guaranteed by the state and federal constitutions. We disagree.

The defendant's lengthy cross-examination of S.G. covered many topics, including the fact that following the incidents of alleged abuse, S.G. made several statements in which she spoke favorably about the defendant. During the cross-examination, S.G. testified that her mother went to the police to report the abuse in 2010. The defendant's attorney asked S.G. about a prior incident involving the Department of Children and Families (department) in March, 2010. The state objected to the inquiry and, outside of the presence of the jury, the defendant's attorney made the following proffer: "[S.G.] made an allegation at school that her mother had been beating her and her brothers with a belt and had tried to kill her the night before, and she told the people at school that she was afraid to go home. [The department] got involved, and they did an investigation that day. It turned out that [S.G.] lied, and that did not happen; so, it goes to credibility. They also asked her some questions about the defendant at the time,

whether she had any problems with him, if she's afraid of him, and the reports that we have indicate that she indicated that he's a good father, he's always nice to her and her family, and she has no concerns about her brother being with [the defendant]. And she also indicated that she can't remember the last time that she saw him." The defendant's attorney indicated that, with regard to S.G.'s complaint about her mother, "she admitted that she lied, that she made the whole thing up."

The court sustained the state's objection on the ground of relevance. The court stated that the allegations about U.G. were distinct from those concerning the defendant. The court stated that it would disallow any questions concerning the allegedly false statement concerning S.G.'s mother, but that it would allow inquiry into any statements that S.G. made concerning the defendant. Thereafter, before the jury, the defendant's attorney pursued an inquiry related to the fact that S.G. had made favorable comments to the department about the defendant in March, 2010. Specifically, S.G. acknowledged that she stated that the defendant was "a good dad," "[t]hat he was nice," and that, at that time, she did not recall the last time she had seen him.

Although the defendant couches his claim in constitutional terms, he did not do so at trial. Before the court, he merely stated that the evidence at issue "goes to credibility." The defendant affirmatively seeks review pursuant to the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for our review, and the defendant's claim, implicating the rights to confrontation and to present a defense, is of constitutional magnitude. See *State* v. *Marcelino S.*, 118 Conn. App. 589, 599, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010). The defendant, however, is unable to satisfy *Golding*'s third prong by demonstrating that a constitutional violation clearly exists and clearly deprived him of a fair trial.

As we turn to the merits of the claim, we set forth some applicable principles. "The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the [issue] of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 272–73, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002); see also Conn. Code Evid. § 6-6 (b) (1) ("[a] witness may be asked, in good faith, about specific instances of conduct of the witness, if it is probative of the witness' character for untruthfulness").

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him . . . . Nonetheless . . . [t]he defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process. . . .

"In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . We have emphasized in numerous decisions, however, that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . A defendant may elicit only relevant evidence through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo*, 303 Conn. 589, 610–11, 35 A.3d 243 (2012).

"Even when the proffered testimony is relevant . . . the confrontation clause is offended only when a trial court precludes defense counsel from exposing to the jury facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In such cases, constitutional prejudice is established where a reasonable jury might have received a significantly different impression of [a witness'] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination. . . .

"This analysis necessarily involves a case-and-fact-specific balancing test, weighing the relevance of the proposed cross-examination to the defendant's case against the potential to cause unfair prejudice to the victim and the extent to which the inquiry would be repetitive or duplicative of other evidence. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Finally, trial judges retain wide latitude insofar as the [c]onfrontation [c]lause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (Citations omitted; internal quotation marks omitted.) *State* v. *Mark R.*, 300 Conn. 590, 609–10,

17 A.3d 1 (2011).

Here, the excluded evidence, which was that S.G. made a dishonest statement about her mother to some unknown persons at her school,[5] tended to demonstrate that S.G. had an untruthful character. Yet, this evidence was relevant to an assessment of S.G.'s credibility *generally*, for the defendant's proffer did not suggest that the evidence was in any way related to S.G.'s complaints about the defendant or the sexual abuse she allegedly suffered. The court permitted the defendant to inquire into the substance of the statements that S.G. made about him at the time of this incident at school.

In considering whether the exclusion of the evidence was an improper infringement of the defendant's right to confront S.G., we pay particular attention to the nature of the cross-examination that was undertaken by the defense. At trial, the defendant's attorney conducted a lengthy cross-examination of S.G. Topics covered included dates and ages when abuse allegedly occurred, the physical locations where abuse allegedly occurred, as well as the nature of the living arrangements when abuse occurred. The defendant's attorney inquired with regard to the specific allegations of abuse and the manner in which S.G. reacted to them. The defendant's attorney brought out inconsistencies in S.G.'s testimony and pursued inquiry into statements made by S.G. prior to trial that were favorable to the defendant. Additionally, the defendant's attorney emphasized the fact that, during pretrial investigations into the abuse, S.G. did not disclose all of the facts that she testified to during her trial testimony. Specifically, the defendant's attorney inquired about the potentially consequential fact that, during a 2010 forensic interview, at which time S.G. was made aware of the fact that she should fully disclose details of the abuse, S.G. did not disclose that the defendant had abused S.F., N.W., or K.C. The defendant's attorney also inquired into the fact that, in 2005, S.G. stated to U.G. and the department that the defendant was nice to her and that nothing had happened involving the defendant. These themes were echoed during the closing argument of the defendant's attorney.

The defendant aptly notes that in a case such as the present, in which S.G.'s allegations of abuse were not corroborated by physical evidence and her credibility was of paramount importance, it was necessary that he be afforded an ample opportunity to confront S.G. The record, however, reflects that the court permitted vigorous cross-examination and that the defendant inquired into several topics that shed light on the veracity of S.G.'s allegations and testimony. The defendant's proffer concerning the excluded evidence was that S.G. was untruthful to someone at her school about her mother, this triggered a response by the school, and S.G. admitted that she had told a lie. This evidence does

not strongly call into doubt her veracity, and in light of the fact that the excluded evidence did not pertain to the allegations made by S.G. against the defendant, but to her credibility generally, we do not conclude that the evidence likely would have affected the jury's assessment of S.G. or its verdict. Accordingly, we conclude that a constitutional violation does not exist. The claim fails under *Golding*'s third prong.

IV

Next, the defendant claims that his conviction under three counts of the state's amended substitute information violated his right to a unanimous jury verdict. We disagree.

In the operative amended substitute information, the state charged in count seven that in Bridgeport "on diverse dates between 2005 and 2010, [the defendant] compelled another person, [S.G.], to engage in sexual intercourse by the use of force or by the threat of the use of force against such other person, [S.G.], which reasonably caused such person, [S.G.], to fear physical injury to such person, [S.G.], in violation of [General Statutes §] 53a-70 (a) (1) . . . ." In count eight, the state charged that in Bridgeport "on diverse dates between 2005 and the spring of 2010, the [defendant] engage[d] in sexual intercourse with another person, [S.G.], and such other person, [S.G.], was under thirteen years of age and the actor was more than two years older than such other person, [S.G.], in violation of [General Statutes §] 53a-70 (a) (2) . . . ." In count nine, the state charged that in Bridgeport "on diverse dates between 2005 and the spring of 2010, the [defendant] had contact with the intimate parts . . . of a child, [S.G.], under sixteen (16) years of age, or subjected a child, [S.G.], under sixteen (16) years of age to contact with the intimate parts . . . of such person, in a sexual and indecent manner likely to impair the health or morals of such child, [S.G.], in violation of [General Statutes §] 53-21 (a) (2) . . . ."

Prior to the start of trial, the defendant filed a motion for a bill of particulars. In support of the motion, the defendant's attorney stated that counts seven, eight, and nine of the complaint "are all catch-all phrases . . . encompassing the same time period for counts one through six. There is no specificity in regard to the allegations in those three counts . . . . We are going to ask for those three counts to be stricken from the information." The prosecutor replied that the counts at issue reflected the extent of the information known to the state. Specifically, the prosecutor replied that these counts reflected S.G.'s general allegations that abuse had occurred approximately ten times during the time period of 2005 to 2010, and that she was not specific as to the physical location where the abuse occurred in Bridgeport because she alleged that abuse occurred in several residences. After hearing argument, the court

stated that these counts reflected the fact that the state, dealing with young complainants, lacked more specific information, but that in contrast to the other counts of the information, for which the state had more precise information, these counts "are intended to embrace other information given by the complainants, which is less specific." Accordingly, the court denied the defendant's request to strike the counts or to compel the state to replead these counts.

On appeal, the defendant raises a claim of a constitutional character, asserting that the court deprived him of his right to a unanimous verdict because, in connection with counts seven, eight, and nine, the state's information was "too broadly worded" and "these counts . . . could encompass a variety of instances [of conduct by the defendant]." The evidence relevant to these counts, the defendant argues correctly, involved acts of oral sex performed by S.G. on the defendant. The evidence supported a finding that the defendant received oral sex while he was in different physical positions, that the incidents occurred in different locations, and that, in one instance, the defendant received oral sex from S.G. and S.F. simultaneously. The defendant asserts that because S.G. testified about factually distinct instances of abuse that possibly could have been encompassed by the broadly worded counts seven, eight, and nine of the information, there existed a risk that the jury could have found him guilty without agreeing unanimously as to the criminal conduct underlying each of these counts. The defendant asserts that "[he] was likely convicted on the basis of juror votes relating to entirely separate incidents."

Although the defendant's attorney argued before the trial court that the counts at issue should be ordered repleaded or stricken from the information, the record does not reflect that the defendant raised the constitutional claim at trial that he advances in this claim before this court. The claim advanced before the trial court reasonably could be interpreted as being limited to an issue of notice to the defense of the nature of the charges. In contrast, the claim raised here is based on the defendant's right to be convicted by a unanimous jury. While not conceding that the issue is unpreserved, the defendant affirmatively requests review pursuant to *Golding*, and such review is warranted because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Griffin*, 97 Conn. App. 169, 182, 903 A.2d 253 ("[a] claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial" [internal quotation marks omitted]), cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

Before considering the merits of the claim, we set forth the basic principles that apply. "Duplicity occurs when two or more offenses are charged in a single

count of the accusatory instrument." (Internal quotation marks omitted.) *State* v. *Saraceno*, 15 Conn. App. 222, 228, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988). "It is now generally recognized that [a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is only duplicitous where the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Citations omitted; internal quotation marks omitted.) Id., 228–29. Here, the defendant argues that the policy consideration implicated is that of avoiding the risk of a nonunanimous verdict because the jury may have agreed that he was guilty under each of the counts at issue but that it may not have reached unanimous agreement about which *specific acts* supported that verdict.

In evaluating the risk of a nonunanimous verdict, it is appropriate that "[w]e first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. *If such an instruction has not been given, that ends the matter.* Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Emphasis added; internal quotation marks omitted.) *State* v. *Dyson*, 238 Conn. 784, 792, 680 A.2d 1306 (1996).

Our careful review of the court's instructions in the present case reveals that the court did not sanction a nonunanimous verdict. When the court delivered its instructions, it repeatedly stated that the jury must consider each count "separately and independently" from the other counts. The court's instructions, viewed as a whole, impressed upon the jury that it must consider the defendant's conduct as it related to each count of the information. As it pertained to the counts at issue, the court reminded the jury that, although the offenses charged in counts seven, eight, and nine, were alleged to have been committed during the same time period in which other offenses were alleged to have been committed, the state bore the burden of proving that the criminal acts at issue in these charges were "separate and distinct" from the acts at issue in the other charges.

The court repeatedly instructed the jury when instructing it as to each count in the state's information, including counts seven, eight, and nine, that it must reach a unanimous verdict. After instructing the jury with regard to the specific counts, the court stated: "I want to impress upon you that you are [duty] bound as jurors to apply the law as I outlined it to determine the facts on the basis of the evidence as has been presented, and then to render a verdict fairly, uprightly, and without any prejudice. *When you reach a verdict as to any count it must be unanimous. All of you must agree to it whether that verdict is guilty or not guilty.*" (Emphasis added.)

The court's charge not only reminded the jury as to the importance of keeping each of the charges distinct in terms of its findings, but the court repeatedly and unambiguously conveyed that the jury must return a unanimous verdict on each count of the information. Moreover, there is nothing in the record to suggest that the jury disregarded the court's instructions; after the verdict was delivered, the jury panel affirmed that its verdict as to each count was unanimous. "[G]iven the court's admonitions concerning unanimity, we must presume that the jury, in the absence of a fair indication to the contrary . . . followed the court's instruction as to the law." (Internal quotation marks omitted.) *State* v. *Jessie L. C.*, 148 Conn. App. 216, 233, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014). Accordingly, we conclude that the claim fails under *Golding*'s third prong.[6]

V

Next, the defendant claims that the court improperly denied his motion to sever counts alleging criminal conduct against S.G. from counts alleging criminal conduct against N.W. and K.C. We disagree.

Counts one through eleven of the information alleged crimes committed against S.G., namely, six counts alleging sexual assault in the first degree, three counts alleging risk of injury to a child, one count alleging attempted sexual assault in the first degree and one count of attempted risk of injury to a child. Count twelve alleged that the defendant committed the crime of sexual assault in the first degree in that he compelled N.W. to engage in intercourse by the use of force or by the threat of the use of force against S.G. Count thirteen alleged that the defendant committed the crime of attempted sexual assault in the first degree in that he attempted to compel K.C. to engage in sexual intercourse by the use of force or by the threat of the use of force against S.G. Count fourteen alleged that the defendant committed the crime of sexual assault in the third degree in that he compelled K.C. to engage in sexual contact by the use of force or by the threat of the use of force against S.G. The jury found the defen-

dant guilty under counts twelve and fourteen, but found him not guilty under count thirteen.

Prior to trial, the defendant filed a motion pursuant to Practice Book § 41-18 to sever counts twelve, thirteen, and fourteen from the remainder of the information, and to order that the severed counts be adjudicated in a separate trial. The defendant asserted therein that counts one through eleven alleged that the defendant engaged in sexual crimes that occurred between 2004 and 2010 against S.G., when she was between approximately seven through twelve years of age. Count twelve alleged that the defendant forced N.W., who was approximately seven years of age, to engage in sexual intercourse with S.G. in 2004 or 2005. Counts thirteen and fourteen alleged that the defendant forced K.C., who was approximately seven years of age, to engage or attempt to engage in sexual intercourse with S.G. in or about 2004 through 2007. The defendant argued that he was prejudiced by the joinder of these "qualitatively different offenses" and argued that the charges should be severed. In argument on the motion, the defendant's attorney stated that counts twelve through fourteen were qualitatively different, that the evidence for these charges would not be cross admissible at a separate trial on the remaining eleven counts, and that counts one through eleven were of a "more severe" nature in that they alleged that the defendant had sex with a young child over a long period of time. The defendant argued that counts twelve through fourteen were of a less serious nature, they related to acts which occurred less frequently, and that they were "qualitatively different" inasmuch as they involved the defendant forcing a child to have sexual intercourse with another child. The defendant's attorney noted his concern that if the charges were not severed, it would be difficult for the jurors to separate them in their minds and to find the defendant not guilty generally. The state objected to the motion to sever and, during the hearing, argued against it.

After hearing argument, the court denied the motion, stating: "I understand the defense argument that [counts] twelve, thirteen and fourteen . . . pled . . . that the defendant compelled one minor to engage in sex with another minor, whereas the prior counts essentially allege that the defendant had sex with or sexual contact with a minor directly.

"The record should be clear that . . . this is not a motion for joinder. The matter has apparently always been pled in a like fashion. Rather, this is the defense's motion to sever these last three counts out.

"I . . . don't see that the last three counts of the information are . . . legally qualitatively different than the prior counts. Most importantly, I think that the jury can give a fair and independent consideration to all of the counts individually, and obviously the court is going

to instruct the jury to do just that, that their consideration of each count is separate and independent of the others, and that a verdict on one count doesn't suggest what a verdict on another count should be. I'll remind the jury of that more than once.

"I don't believe that—certainly these are all in the context of sexual misconduct allegations—I don't know that the jury hearing allegations that the defendant compelled one minor to engage in sex with another, although certainly serious, I don't know that it is more serious than the defendant's claimed direct sexual misconduct toward another minor directly. In fact . . . they're pled within the context, some of them, of the same statute, and the legislature has . . . deemed them to be equally severe.

"I don't think this is a case where the jury is going to confuse the evidence. It's not going to be a trial of great, great length. I think they'll be able to keep the evidence separate and distinct in their minds, and for that reason I believe that I think the touchstone is, again, not the fact that there may be prejudice resulting to the defendant as a result of the manner in which the information is pled or the counts that are pled . . . but whether or not there's undue prejudice to the defendant so that his right to a fair consideration of the case by the jury would be affected. And I don't believe that there's undue prejudice to the defendant in this particular situation."

Echoing the arguments for severance that he advanced before the trial court, the defendant argues that the court's analysis was deficient. He asserts that severance was required for a variety of reasons. He argues that the charges at issue involved discrete factual scenarios. He argues that the victims were not similarly situated in terms of age, relationship to the defendant and the types of sexual abuse alleged. In this regard, he reiterates his argument that the types of abuse alleged in counts one through eleven were more shocking than the types of abuse alleged in counts twelve through fourteen. Also, he argues that evidence related to the counts involving S.G. would not have been cross admissible in a trial concerning the counts involving N.W. or K.C., and vice versa. Finally, the defendant argues that the trial, which took place over the course of six days, involved several incidents and was complex in nature.

"The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19 provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. See also General Statutes § 54-57 ([w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character,

counts for such offenses may be joined in one information unless the court orders otherwise). In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"Substantial prejudice does not necessarily result from a denial of severance even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987)], we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 27–29, 942 A.2d 373 (2008).

In *State* v. *Payne*, 303 Conn. 538, 549, 34 A.3d 370 (2012), our Supreme Court rejected the presumption in favor of joinder that had previously been expressed in the law. The court stated: "[W]e now reject the blanket presumption in favor of joinder and establish the burden of proof concerning joinder at trial as follows: *In the*

*trial court, when multiple charges have already been joined in a single information by the state pursuant to § 54-57, and the defendant has filed a motion to sever the charges for trial pursuant to Practice Book § 41-18, the defendant bears the burden of proving that the offenses are not of the 'same character'; General Statutes § 54-57; and therefore that the charges should be tried separately.* On the other hand, when charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors." (Emphasis added; footnotes omitted.) *State* v. *Payne*, supra, 549–50. With regard to situations, like the situation that existed in the present case, in which the prosecutor has joined multiple charges in a single information prior to trial, the court stated: "Because § 54-57 restricts prosecutors to joining multiple charges in a single information only when, in good faith, they find that the offenses were 'of the same character,' we are not concerned that prosecutors will do so in all cases in order to pass the burden on to the defendant." Id., 549 n.9.

In accordance with the foregoing authority, we begin our analysis by examining whether the offenses at issue were of the same character. Despite the defendant's arguments to the contrary, we conclude that he failed to demonstrate before the trial court that the offenses charged in counts one through eleven were of a different character than those charged in counts twelve through fourteen. The defendant states that S.G. was "subjected to a type of abuse that was qualitatively different from that of the other victims," namely, N.W. and K.C. (Internal quotation marks omitted.) The defendant states: "[S.G.] was alleged to have been sexually assaulted by a grown man, [the] defendant, in counts [one] through [eleven] over the course of several years in several different ways. [N.W.] and K.C. on the other hand, were alleged to have been told to sexually assault [S.G.]. . . . Neither of the two boys alleged that they were directly abused by [the] defendant." (Internal quotation marks omitted.) This argument simply misses the fact that all fourteen counts of the information were of the same character—they related to offenses that reflected his propensity to commit sexual misconduct against the children in his care. Alternatively, the evidence was indicative of a scheme, perpetrated by the defendant, to subject S.G. to sexual abuse. S.G. was at the center of all of the instances of sexual abuse that occurred in this case.

Additionally, the defendant is unable to demonstrate injustice or substantial prejudice. This is because, in accordance with the liberal standard of relevance governing evidence of uncharged sexual misconduct discussed in part I of this opinion, which applies with equal force to evidence of sexual misconduct with which a defendant is charged,[7] the evidence related to counts one through eleven would have been cross admissible in a second trial involving counts twelve through fourteen. The evidence was relevant to demonstrating that the defendant had a propensity to engage in aberrant and compulsive sexual behavior with children. There can be no dispute that the sexual events in counts twelve through fourteen occurred during the same period of time in which the state alleged that the defendant was committing sexual assaults upon S.G. personally. The offenses were similar in that they involved the sexual abuse of S.G., and the crimes were committed by means of the defendant exercising his control over children in his care. Furthermore, S.G., N.W., and K.C. were similar in age. Although N.W. and K.C. were not victims in the offenses charged in counts one through eleven, S.G. was integral to the commission of the crimes in counts twelve through fourteen. Here, there is no difficulty concluding that all of the crimes were committed against similar persons.

"Our Supreme Court has determined that [w]here evidence of one incident *can* be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Emphasis in original; internal quotation marks omitted.) *State* v. *Webb*, 128 Conn. App. 846, 858, 19 A.3d 678, cert. denied, 303 Conn. 907, 32 A.3d 961 (2011). That is the case here and, accordingly, we need not engage in an evaluation of the *Boscarino* factors. In light of the foregoing, we conclude that the defendant has not demonstrated that the denial of the motion for severance reflected an abuse of discretion.[8]

## VI

Finally, the defendant claims that the evidence was insufficient for a conviction under counts twelve and fourteen of the information. We disagree.

Count twelve of the state's amended substitute information, which involved the victim N.W. and alleged the crime of sexual assault in the first degree, provides in relevant part that the defendant "compelled another person, [N.W.], to engage in sexual intercourse by the use of force or by the threat of the use of force against another person, [S.G.], which reasonably caused such person, [N.W.], to fear physical injury to such person, [S.G.], in violation of [General Statutes §] 53a-70 (a) (1) . . . ." Count fourteen of the state's amended substitute

information, which involved the victim, K.C., and alleged the crime of sexual assault in the third degree, provides in relevant part that the defendant "compelled another person, [K.C.], to engage in sexual contact by the use of force or by the threat of the use of force against such other person, [S.G.], which reasonably caused such person, [K.C.], to fear physical injury to such person, [S.G.], in violation of [General Statutes §] 53a-72a (a) (1) (A) (B) . . . ."

Relevant to count twelve, S.G. testified that, while she was in the bedroom of N.W.'s mother in Bridgeport, "[N.W.] was forced to put his penis in my vagina." She testified that at the time of the offense, she and N.W. were crying and that the defendant "pushed" N.W. on top of her, at which time his penis "was forced" into her vagina. S.G. testified that she did not remember the defendant saying anything during this event, but that the conduct at issue occurred "[m]ore than one time."

N.W. testified with regard to this incident as follows:

"Q. All right. Now, do you ever recall a time that you were alone with [S.G.]?

"A. Yes.

"Q. Okay; and could you tell us what happened on that occasion?

"A. One day after school, [the defendant] had picked me up . . . and then he brought us back to the house and stuff, and he brought me in a room and [S.G.] was there. She was naked on the bed.

"Q. Okay; and then what happened?

"A. And then . . . he told me take my clothes off and stuff, and then he was telling me to put my [penis] in [S.G.'s vagina]. . . .

"Q. All right; and tell me what happened then.

"A. And then . . . I didn't want to do it, but he was calling me names and stuff.

"Q. What kind of names was he calling you?

"A. Punk and pussy and faggot and stuff. So, I did it for a little bit, then I was getting scared and, like—and then he told her to get on top of me and she did, and I pushed her off, I ain't want to do it no more.

"Q. Okay.

"A. After that, I just went outside.

"Q. And what was [S.G.] doing? What was her emotional state when this was going on?

"A. Well, I could tell she was scared, too."

N.W. testified that he did not engage in the foregoing conduct willingly, but that he was afraid that if he did not comply with the defendant that the defendant would "beat [him] or something." He stated that he feared the

defendant and that he, S.G. and K.C. had been physically disciplined by the defendant.

With regard to count fourteen, S.G. testified that, while she was in the bedroom of N.W.'s mother in Bridgeport, "[K.C.] was forced to touch my private parts" in the defendant's presence. S.G. testified that K.C. "was pushed toward me . . . and he was hit." S.G. testified that she did not remember the defendant saying anything during this event.

With regard to this incident, K.C. testified that his father, the defendant, was in a bedroom with S.G., at which time the defendant told S.G. to remove her clothing. He testified that the defendant asked him "[t]o feel up on her," in response to which K.C. touched S.G.'s "private areas" with his hands. K.C. testified that this conduct occurred more than once. K.C. stated that he was forced to do these things with S.G., that he was "scared," and that, if he did not comply, the defendant would call him names such as "[p]unk" or "[p]ussy." K.C. testified that he did not report this type of activity because the defendant beat him and the other children "a lot."

At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal. With regard to counts twelve and fourteen, the defendant's attorney argued that the evidence failed to demonstrate that either N.W. or K.C. acted toward S.G. in the sexual manner that they did because they feared physical injury to S.G. Reasoning that the defendant's argument was premised on an unreasonably narrow interpretation of the evidence, the court denied the motion.

As he did at trial, the defendant argues on appeal that, contrary to the manner in which the state drafted its allegations in counts twelve and fourteen,[9] the evidence did not demonstrate that either N.W. or K.C. acted in the manner that they did because they feared physical injury to S.G. Accordingly, the defendant claims that the state failed to satisfy its burden of proof with regard to both counts and, thus, his conviction under these counts cannot stand.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the [trier of fact] are so unreasonable as to be unjustifiable. . . . This court

cannot substitute its own judgment for that of the [trier of fact] if there is sufficient evidence to support [its] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Sadowski*, 146 Conn. App. 693, 695–96, 79 A.3d 136 (2013), cert. denied, 311 Conn. 903, 83 A.3d 604 (2014).

An understanding of the essential elements of the crime or crimes at issue is the necessary starting point of any sufficiency of the evidence analysis. At this juncture, the parties disagree. The defendant asserts that the state had a duty to prove counts twelve and fourteen in accordance with the factual manner in which they were alleged in the information. The state asserts that its burden was to prove only the essential elements of the crimes as set forth in the specific portions of the statute alleged in the information, and that although the state alleged that N.W. and K.C. acted out of fear for S.G., such factual details were not essential elements of the crimes. We agree with the state.

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ." Thus, § 53a-70 (a) (1) requires proof that a defendant (1) compelled another person to engage in sexual intercourse and (2) that he did so either by using force against such person or a third person or by using the threat of use of force, which reasonably caused such person to fear physical injury to themselves or to a third person.

Section 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ." Thus, § 53a-72a (a) (1) (A) and (B) require proof that a defendant (1) compelled another person to submit to sexual contact and (2) that he did so either by using force against such other person or a third person or by using the threat of the use of force against such other person or a third person, which reasonably caused such other person to fear physical injury to themselves or to a third person.

The evidence, viewed in the light most favorable to sustaining the verdict, readily supported a finding that N.W. and K.C. acted in the manner that they did because they feared physical retribution at the hands of the defendant. The cumulative force of the evidence, including the ages of the victims involved, their knowledge

of the defendant's propensity to inflict physical abuse and their testimony that they did not act willingly, but out of fear, reflects that the defendant compelled their behavior by means of threatened use of force. Accordingly, the evidence readily supported the conviction under both counts at issue.

The defendant's argument that, consistent with the information, the state was bound to prove that N.W. and K.C. were compelled to act out of a fear of the use of force against S.G. is unavailing. "[G]enerally speaking, the state is limited to proving that the defendant has committed the offense in substantially the manner described in the information. . . . Despite this general principle, however, both this court and our Supreme Court have made clear that [t]he inclusion in the state's pleading of additional details concerning the offense does not make such allegations essential elements of the crime, upon which the jury must be instructed. . . . Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, the *inclusion of additional details in the charge does not place on the state the obligation to prove more than the essential elements of the crime*." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 38, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006); see also *State* v. *King*, 289 Conn. 496, 522 n.16, 958 A.2d 731 (2008); *State* v. *Beavers*, 99 Conn. App. 183, 192–93, 912 A.2d 1105, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007). Accordingly, we reject the claim of insufficient evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the three victims in this case or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] The jury returned a verdict of not guilty with regard to one count of attempted sexual assault in the first degree. The trial court imposed a sentence of thirty years incarceration, seventeen years of which were mandatory, followed by fifteen years of special parole.

[3] At trial, immediately after S.G. described the events at issue, the court stated: "Okay. Ladies and gentlemen, the witness has testified about events concerning [S.F.], who is not a complainant in this particular case. And you're not to speculate or infer or conclude anything by virtue of that alone, that she is not a complainant in this case.

"But I wanted to say this to you. In a criminal case in which a defendant is charged with a crime exhibiting anything abhorrent or compulsive criminal sexual behavior, evidence of the admission of another offense, uncharged offense, and here that would be acts directed toward S.F., is admissible and may be considered for its bearing on any matter which is relevant. However, evidence of this uncharged offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. Bear in mind that, as you consider this evidence, that at all times the state has the burden of proving the defendant committed each of the elements of the crimes charged in this information.

"And I remind you that the defendant is not on trial for any act or claimed offenses not charged in the information. And, of course, the credibility and the weight you give to this evidence is for you and you alone to decide.

"So, this uncharged misconduct, meaning it's not part—that is, any acts, any evidence of acts directed toward [S.F.]—is not charged in this information but may be considered by you for matters which are relevant. Okay. We'll go on." The court delivered a materially similar instruction during its final charge to the jury.

[4] We note that the defendant primarily attempts to differentiate the uncharged misconduct on the basis of S.F.'s subsequent trial testimony, which obviously was unknown to the court at the time that it made its ruling. S.F. testified that, during the incident at issue, the defendant became upset because he wanted to molest S.G., but S.G. ran away from him. S.F. testified that "[t]he defendant beat on me because he was upset . . . and then he molested me." The defendant suggests that the charged allegations of sexual misconduct did not involve this degree of violence.

[5] In his brief, the defendant states that the evidence at issue was that "[S.G.] had lied to her school officials and [the department]," and asserts that "[l]ying under oath is a clear example of lack of veracity." (Internal quotation marks omitted.) The defendant's proffer before the trial court, however, merely included the fact that S.G. had lied to persons at her school and later recanted. There was no suggestion in the proffer that S.G. had made an untruthful statement while under oath.

[6] In our resolution of the defendant's claim, we are guided by this court's analyses in *State* v. *Jessie L. C.*, supra, 148 Conn. App. 226–33, and *State* v. *Marcelino S.*, supra, 118 Conn. App. 592–97, cases that involved charges analogous to those at issue in the present case. In rejecting the defendant's claim of prejudice as a result of a duplicitous information in *Marcelino S.*, this court, quoting appellate precedent, observed: "[I]n a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity." (Internal quotation marks omitted.) *State* v. *Marcelino S.*, supra, 597.

[7] See, e.g., *State* v. *Johnson*, 289 Conn. 437, 452, 958 A.2d 713 (2008).

[8] Although our conclusion that the evidence was cross admissible obviates the need to discuss potential prejudice in any greater detail, we observe that the jury's finding of not guilty with regard to count thirteen dramatically weakens the force of the defendant's argument that the trial on all fourteen counts likely confused the jury and led it to return a verdict that was based on its prejudice against the defendant rather than a rational consideration of the evidence.

[9] The defendant argues that the state chose to draft its information in this manner after significant pretrial discussion. Our review of the record reveals that these discussions took place in the context of clarifying the nature of the state's allegations. At the present juncture, the defendant does not claim prejudice resulting from the details included in the information, nor does he claim that he lacked sufficient notice of the manner in which the state proved the counts at issue. Instead, he raises a claim that is based on the sufficiency of the evidence. Thus, our analysis is unaffected by this aspect of his argument.